UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-59 |
| | ) | |
| CHARLES L. ADKINS | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's First Motion to Dismiss for Lack of Jurisdiction [DE 21], filed on July 26, 2007, and the Defendant's Supplemental Motion to Dismiss [DE 38], filed on October 25, 2007. The government responded to the first motion on August 10, 2007 [DE 27], and the second motion on November 13, 2007 [DE 40]. The Defendant replied on November 20, 2007 [DE 42]. For the reasons stated in this opinion, the Defendant's motions are DENIED.

**BACKGROUND**

The Defendant and the government have stipulated to most of the relevant facts for the purpose of pretrial briefing. The Defendant was convicted of carnal knowledge with a child in Albermarle County, Virginia, on November 24, 1999, under cause number CR 99-013925. The conviction meant that Virginia law required the Defendant to register with the commonwealth as a sex offender. On February 17, 2000, the Defendant was sentenced to a term of eight years imprisonment, and on March 31, 2000, that sentence was suspended. On July 26, 2003, he completed and signed a sex offender registration form with the Commonwealth of Virginia. The Defendant then served an additional term of imprisonment for a probation violation, and he was later released from custody in Virginia on September 6, 2006.

On January 9, 2007, the Defendant began staying in room number 125 of the Parkview Studios in Fort Wayne, Indiana, and he concluded his stay there on February 11, 2007. The parties do not appear to agree on when, if ever, the Defendant left Indiana. The Defendant claims he "was gone before February 11, 2007. That fact is undisputed." (DE 42 at 6). However, the government's responses do not indicate any particular date, if there is one at all, that it believes the Defendant left Indiana. The affidavit attached to the complaint indicates that the Defendant may have been in Indiana in April 2007.[1] (DE 1 at 3.) The government's first response also alleges that "[a]dditional information revealed that Adkins had contact with the Fort Wayne Police Department in April 2007." (DE 27 at 2.) The Court therefore notes that this fact, whether the Defendant was in Indiana after February 11, is in dispute. The government does not concede in any of its filings that the Defendant had left the state by February 11. The parties do agree that the Defendant was never registered as a sex offender in Indiana.

The criminal complaint against the Defendant alleging that he violated 18 U.S.C. § 2250 was filed on May 31, 2007. On June 27, 2007, the grand jury returned a single count indictment charging the Defendant with the violation of 18 U.S.C. § 2250 for failing to register as a sex offender.

The Defendant filed his First Motion to Dismiss Due to Lack of Jurisdiction on July 26, 2007. In that motion, the Defendant asserted that Sex Offender Registration and Notification Act

---

[1] The affidavit alleges that:

> law enforcement learned that on April 4, 2007 Adkins had been involved in a domestic dispute with his wife, Sharon Adkins. Adkins left threatening messages on his wife's cellular telephone. On April 5, 2007, Sharon Adkins' mother called the Fort Wayne Police Department to report that she had been contacted by Adkins. The call was traced to Hutch Shoe Repair located at 6427 Bluffton Road, Fort Wayne, Indiana.

(DE 1 at 3.)

("SORNA") violates the commerce clause and, as such, the indictment should be dismissed. The government responded by arguing that because the Defendant is a person or thing in interstate commerce, and because he utilized the channels of interstate commerce when he traveled from Virginia to Indiana, SORNA's application to the Defendant does not violate the commerce clause. During the telephonic motion hearing on August 27, 2007, the Defendant requested the opportunity to file a supplemental motion, which the Court granted. In the Defendant's memorandum in support of his supplemental motion, he argued that 18 U.S.C. § 2250 was an ex post facto law as applied to him. The government responded and expressed its disagreement. The Defendant then replied to the government's response, this time adding the argument that SORNA violates the Defendant's due process rights as well.[2]

## ANALYSIS

**A.      History of SORNA and 18 U.S.C. § 2250**

On July 27, 2006, the President approved the Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act"), which Congress passed to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub. L. No. 109-248, 120 Stat. 587, 587 (2006). Title I of the Walsh Act is SORNA, the purpose of which is "to protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. SORNA generally

---

[2] Because the Defendant's reply to the government's response presented new arguments, it would normally be appropriate to allow the government to respond. However, because it has already been over four months since the first motion to dismiss was filed, and because the Court believes the Defendant's due process argument is without merit, the Court will rule on the motion without permitting the government to respond to the new arguments in order to expedite the resolution of this case.

requires the states to conform their sex offender registration laws to the SORNA requirements at the risk of losing federal funding. SORNA, through 18 U.S.C. § 2250, also imposes registration requirements on sex offenders who are subject to federal jurisdiction and makes the failure to register as a sex offender subject to a maximum penalty of ten years imprisonment. Prior to SORNA, a 1994 federal law, known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, made it a misdemeanor to fail to register under a state sex offender registration program. 42 U.S.C. § 14072(i).

The elements for failing to register under § 2250(a) are that a defendant: (1) was a sex offender as defined under SORNA and, therefore, required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a). SORNA delegated to the Attorney General the authority to determine the applicability of the Act to sex offenders convicted before the enactment of SORNA. On February 16, 2007, the Attorney General promulgated 29 C.F.R. Part 72, an interim rule, extending the provisions of SORNA to sex offenders whose convictions predated SORNA. The regulation was published in the Federal Register on February 28, 2007.

**B.     Ex Post Facto Challenge**

The Court recently analyzed an ex post facto challenge to SORNA in *United States v. Carr*, No. 1:07-CR-73, 2007 WL 3256600 (N.D. Ind. Nov. 2, 2007). Because both parties cite to that opinion, the Court will repeat its analysis of the ex post facto clause here.

The ex post facto clause of the Constitution prohibits Congress from criminalizing conduct after it has occurred, *Collings v. Youngblood*, 497 U.S. 37, 41 (1990), or from increasing

4

the punishment for a crime after it is committed, *Miller v. Florida*, 482 U.S. 423, 429 (1987). U.S. Const., Art. I, § 10, cl. 1. This constitutional prohibition has come to apply "only to penal statutes which disadvantage the offender affected by them." *Collins*, 497 U.S. at 41. Therefore, a statute will not violate the ex post facto clause if it is designed to be nonpunitive and regulatory and the defendant cannot establish by the clearest proof that the state's choice was excessive in relation to its legitimate regulatory purpose. *See Smith v. Doe*, 538 U.S. 84, 92 (2003) (applying well-established framework for determining whether a law constitutes retroactive punishment in violation of the ex post facto clause to Alaska's sex offender registration and notification law). In *Smith*, the Supreme Court concluded that the Alaskan sex offender registration and notification statutes' retroactive application did not violate the ex post facto clause because the statutes constituted a nonpunitive, civil scheme. 538 U.S. at 105–06.

      The Defendant argues that the instant case is different from *Carr* in that the Defendant in *Carr* remained in Indiana after February 16, 2007, and the Defendant believes that there is no dispute in this case that he "was gone before February 11, 2007." (DE 42 at 6.) The Court cannot discern where the Defendant got the impression that it is undisputed that the Defendant was not present in Indiana after February 11, 2007. The affidavit to the complaint alleges that the Defendant was present in Indiana in April 2007, and the government's First Opposition to Defendant's Motion to Dismiss alleges that "Adkins had contact with the Fort Wayne Police Department in April 2007." (DE 27 at 2.) The indictment itself begins, "[o]n or about April, 2007, in the Northern District of Indiana." (DE 12 at 1.) The government is alleging, as it did in *Carr*, that the Defendant was in Indiana subsequent to the date when SORNA became applicable to the him. As such, the government is correct that the Court's *Carr* analysis is directly on point

5

in this case.

The courts of appeal have not yet addressed the question of whether the application of SORNA to defendants such as Mr. Adkins — defendants who traveled in interstate commerce prior to the time at which the Act become applicable to them and allegedly failed to register after the Act became applicable to them — violates the ex post facto clause. While the federal district courts are divided on the issue, this Court agrees with those district courts that have analyzed SORNA and found it, like the statute in *Smith*, to be a civil, nonpunitive regime for the purpose of public safety. *See United States v. Gill*, — F. Supp. 2d —, 2007 WL 3018909, at * 3 (D. Utah Oct. 15, 2007) (holding that *Smith's* interpretation of the ex post facto clause was controlling because SORNA's purpose, like the Alaska registration requirement, was not to punish sex offenders but to inform the public about his background); *United States v. Hinen*, 487 F. Supp. 2d 747, 755–57 (W.D. Va. 2007) (finding that Congress's purpose was to establish a comprehensive national system for registration of sex offenders so as to protect the public from sex offenders and offenders against children); *United States v. Madera*, 474 F. Supp. 2d 1257, 1264 (M.D. Fla. 2007) (relying heavily on the Supreme Court's decision in *Smith v. Doe* to conclude that SORNA did not violate the ex post facto clause); *United States v. Mason*, — F. Supp. 2d —, 2007 WL 1521515, at *5 (M.D. Fla. May 22, 2007) (finding insufficient evidence to override legislative intent and transform SORNA from a civil scheme into a criminal penalty); *United States v. Manning*, 2007 WL 624037, at *1 (W.D. Ark. Feb. 23, 2007) (concluding that the "retroactivity of the registration law does not violate the ex post facto clause of the Constitution as it is not punitive, but a civil regulatory scheme with no punitive purpose or effect"); *United States. v. Templeton*, 2007 WL 445481, at *5 (W.D. Okla. Feb. 7, 2007) (using

reasoning set forth in *Smith* to conclude that SORNA is nonpunitive, and its retroactive application does not violate the ex post facto clause).[3] Because SORNA is a civil, nonpunitive regime for the purpose of public safety, and because the Defendant cannot establish by the clearest proof that Congress's choice was excessive in relation to its legitimate regulatory purpose, SORNA's application to the Defendant does not implicate the ex post facto clause.

The Defendant argues that the courts that find *Smith v. Doe* controlling fail to recognize that the case "is not on point with the issues with Adkins." (DE 42 at 6.) The Defendant supports this argument first by asserting that *Smith* is distinguishable because the Alaskan Act required registration with the Department of Safety rather than with the Attorney General. The fact that Congress determined that the Attorney General was the most appropriate official to administer SORNA does not necessarily render the Act punitive, especially since the Alaskan Department of Safety itself was charged with the enforcement of criminal laws. *Smith*, 538 U.S. at 96.

The Defendant next argues that an even more important distinction is that "the Alaskan Statute was not tied to a criminal statute." (DE 42 at 7.) However, the Alaskan statute was tied to a criminal statute. Under the Alaskan regime, a "sex offender who knowingly fails to comply with the Act is subject to criminal prosecution." *Id.* at 90.

The Court also notes that even if *Smith v. Doe* does not dispose of the Defendant's ex post facto claim, there is support for the government's argument that the Defendant's failure to register, because the failure continued beyond the effective date of SORNA, could subject him to the enhanced penalty even if SORNA's statutory scheme was found to be punitive. In *United States v. Black*, 125 F.3d 454 (7th Cir. 1997), the defendant lodged an ex post facto clause

---

[3] This is a non-exhaustive list of cases that have ruled that SORNA, like the statute considered in *Smith v. Doe*, is not penal.

7

challenge to his prosecution for failing to pay past due child support. The debt arose before the passage of a federal law that imposed punishment on a person who willfully failed to pay past due child support obligations. The defendant argued that, because the debt arose before passage of the law, and because his sons were emancipated when the law was enacted, imposing punishment upon him for failure to pay violated the ex post facto clause. The court held that when the debt arose was not relevant—only that it remained unpaid. 125 F.3d at 466–67. Likewise, it is not relevant that some elements of the offense in this case occurred prior to the applicability of SORNA to the Defendant, namely the obligation to register and the interstate travel. What is relevant is that the Defendant remained unregistered in the state of Indiana after SORNA became applicable to him.

The Court finds that SORNA is a civil, regulatory statute of the ilk examined in *Smith v. Doe*, and, as such, does not implicate the ex post facto clause. Alternatively, the Defendant is not being held accountable for pre-SORNA conduct. The conduct prohibited by § 2250(a) is the failure to register as a sex offender. The Indictment charges that the Defendant failed to register in April 2007, after SORNA became applicable to him.

The Defendant adds a new wrinkle to his ex post facto challenge claim in his reply brief. In the ex post facto section of the reply brief, the Defendant argues that only the provisions that specify the applicability of SORNA's registration requirements are retroactive, and the accompanying penalties for failing to comply are not retroactive. The Defendant asserts that "[s]ubsection (d) is the only place within the entire statute where any reference is made to a possible retroactive application." (DE 42 at 8.) 42 U.S.C. § 16913(d) provides that:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or

>its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). While subsection (b) refers to the initial registration requirements, subsection (d) explicitly states that the Attorney General has the authority to specify the applicability of the requirements of the "subchapter." The subchapter is SORNA, which includes the penalty provisions. As another court aptly put it, "[c]onstruing the statute to allow for a retroactive requirement of initial registration without requiring that the registration be kept current would defeat the purpose of the act and lead to absurd results." *United States v. Pitts*, No. 07-157-A, 2007 WL 3353423, at *3 (M.D. La. Nov. 7, 2007).

### C.   Due Process Challenge

The Defendant next argues that the application of SORNA to him violates the due process clause of the Fifth Amendment in two ways. First, he was not notified that he was required to register in Indiana before or after he arrived here. Second, because SORNA has not been implemented in Indiana, it was impossible for the Defendant to comply with the Act.

It is undisputed that the laws of Virginia, both before and after the enactment of SORNA, required the Defendant to register as a sex offender. The Defendant completed and signed a Sex Offender Registration Form with the Commonwealth of Virginia, and he registered as a sex offender there. There is no dispute that under the laws of Indiana, the facts alleged in the Indictment give rise to a duty for a sex offender such as the Defendant to register with the state. The Defendant therefore had sufficient notice that a failure to register was illegal, particularly since the "Defendant is presumed to know the law." *United States v. Sax*, 39 F.3d 1380, 1390

(7th Cir. 1994). Based on the facts in the Indictment, SORNA did not impose any new obligations upon this Defendant other than those that existed prior to the Attorney General's promulgation.

A district court in Virginia, the state in which the Defendant was convicted of the underlying sex offense, articulated the most significant flaw in the Defendant's first due process argument that there is no evidence that the Defendant received notice that he was required to register as a sex offender.

> Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected [to] keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation.

*United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007).

As for the Defendant's second argument, that compliance with the Act was impossible, it too fails. 42 U.S.C. § 16913(a) provides that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." Both Virginia and Indiana have maintained sex offender registries, both before and after the enactment of the Walsh Act. The fact that the states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so) is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the Act. It was clearly possible for the Defendant to comply with SORNA, and as such, there is no due process violation.

**D.     Commerce Clause Challenge**

The Defendant argues that the Court lacks jurisdiction over this matter because Congress exceeded its power under the commerce clause when it enacted 18 U.S.C. § 2250. In support of this argument, the Defendant asserts that his movement from Virginia to Indiana has not affected or involved interstate commerce. The government responds that Congress has the power to regulate persons or things in interstate commerce (which it argues includes traveling convicted sex offenders) as well as the channels of interstate commerce.

Article I, section 8 of the Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "The standard of commerce clause review is narrow and deferential," since "the Commerce Clause is a grant of plenary authority to Congress." *United States v. Kenney,* 91 F.3d 884, 887 (7th Cir. 1996) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 276 (1981)). As a result, federal courts must only look to see " whether Congress could have had a rational basis for utilizing its Commerce Clause powers and to ensure that the regulatory means chosen were 'reasonably adapted to the end permitted by the Constitution.'" *Id.* (quoting *Hodel,* 452 U.S. at 276). It is up to the courts to ultimately decide whether Congress exceeded its constitutionally enumerated powers in enacting the statute at issue. *Id.* (citing *United States v. Wilson,* 73 F.3d 675, 680 (7th Cir. 1995)).

The Supreme Court has explained that the commerce clause covers three broad categories of activity that Congress may regulate: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a

11

substantial relation to interstate commerce, i.e. those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citations omitted).

Congress has attempted to improve the system for tracking sex offenders as they move across state lines through SORNA. Congress was aware of the limits of its power, however, and included the jurisdictional element of interstate travel. As such, Congress allowed for the prosecution of only those offenders moving in interstate commerce. Congress's authority to regulate the channels of interstate commerce and those persons in interstate commerce is sufficient to support the enactment of 18 U.S.C. § 2250. The Court finds that Congress acted within its power under the commerce clause in enacting SORNA.[4]

**ORDER**

For the reasons stated in this opinion, the Defendant's First Motion to Dismiss for Lack of Jurisdiction [DE 21] and the Defendant's Supplemental Motion to Dismiss [DE 38] are both DENIED. This matter is set for a telephonic scheduling conference on December 12, 2007, at 9:30 a.m. to set the final pretrial conference and jury trial dates. The Court will initiate the call.

SO ORDERED on December 7, 2007.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[4] This finding is consistent with the overwhelming majority of courts that have considered the issue. *See, e.g.*, *United States v. Ambert*, No. 4:07-CR-053-SPM, 2007 WL 2949476, at *4 (N.D. Fla., Oct. 10, 2007); *United States v. Gonzales*, No. 5:07cr27-RS, 2007 WL 2298004, at *9 (N.D. Fla. Aug. 9, 2007); *United States v. Muzio*, No. 4:07CR179 CDP, 2007 WL 2159462, at *7 (E.D. Mo. July 26, 2007); *United States v. Mason*, 510 F. Supp. 2d 923, 931–32 (M.D. Fla. 2007); *United States v. Templeton*, No. CR-06-291-M, 2007 WL 445481, at *3, *4 (W.D. Okla. Feb. 7, 2007); *United States v. Madera*, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007).